E. G. FITZGERALD, Appellant,

v.

CITY OF ARDMORE, OKLAHOMA, a
municipal corporation, Appellee.

Willie Mae LANE, Appellant,

v.

CITY OF ARDMORE, OKLAHOMA, a
municipal corporation, Appellee.

Nos. 6285, 6301.

United States Court of Appeals
Tenth Circuit.

June 21, 1960.

W. J. Williams, Ardmore, Okl. (J. E.
Williams and E. H. Williams, Ardmore,
Okl., on the brief), for appellant, E. G.
Fitzgerald.

Woodrow George, Ardmore, Okl.
(George & George, Ardmore, Okl., on the
brief), for appellant, Willie Mae Lane.

Andrew B. Riddle, Jr., Ardmore, Okl.,
for appellee, City of Ardmore, Okl.

Before PICKETT and BREITEN-
STEIN, Circuit Judges, and SAVAGE,
United States District Judge.

SAVAGE, District Judge.

These are consolidated appeals from a
judgment of the United States District
Court for the Eastern District of Okla-
homa. They present the common ques-
tion of whether the title to a portion of
an abandoned railway right of way in the
City of Ardmore is vested in the munici-
pality or in the owners of abutting lots.
If the abandonment did not occur until
cessation of use of the right of way by
the railroad in 1948, title at that time was

acquired by the City. If the abandonment occurred on November 1, 1908, the date upon which the railroad's right to purchase fee title to the land expired and before it became a part of the City, the title is in the abutting owners. The trial court thought that the right of way was abandoned in 1948, and that the title thereupon vested in the City of Ardmore. We hold that this Court's decision in Chickasha Cotton Oil Co. v. Town of Maysville, 10 Cir., 249 F.2d 542,[1] is controlling and that abandonment occurred in 1908 at which time title vested in the abutting owner.

The facts are stipulated. The predecessors of the St. Louis-San Francisco Railway Company acquired the right of way under the Acts of Congress providing for acquisition by railroads of easements over Indian tribal lands.[2] Thereafter and on September 5, 1905, patent was issued by the Choctaw-Chickasaw Nations to Rosa McLish, a citizen of the Chickasaw Nation, conveying to her certain lands less 12.08 acres occupied as a railroad right of way. In 1916, the allottee platted that portion of the lands abutting the right of way into lots and blocks which was annexed as a new addition to the City of Ardmore. The appellant Lane claims ownership of all the lots abutting the right of way while appellant Fitzgerald claims certain of the abutting lots. They each deraign their title from the allottee. Because of its decision that the title vested in the City of Ardmore, the trial court did not consider the contested issues between Lane and Fitzgerald.

■ It is a rule of general application that the servient estate in a strip of land burdened with an easement for a railroad right of way or other purposes passes with a conveyance of the fee to the abutting legal subdivision or tract out of which it was carved without express provision to that effect in the instrument of conveyance. Upon abandonment of the easement the dominant estate becomes extinguished and the entire title and estate vests in the owner of such abutting subdivision or tract.[3] In reliance upon this general rule appellants contend that title to the land in question passed to the allottee by the patent from the Choctaw and Chickasaw Nations subject only to the right of use for railway purposes. This contention cannot be sustained. While we conclude that title eventually vested in the allottee, we must take a more circuitous route.

In Chickasha Cotton Oil Co. v. Town of Maysville, the Court decided that the common law rule of reverter does not apply in respect to certain lands allotted to members of the Choctaw and Chickasaw tribes. It was there pointed out that the Act of July 1, 1902,[4] outlined the procedure by which the lands of the Choctaw and Chickasaw tribes were to be allotted in severalty to their members and that Section 26(b) of the Act provided that all lands to which at the time of the final ratification of the agreement any railway company had a vested right to right of way should be RESERVED FROM ALLOTMENT. It was shown that one of the purposes of the Act of April 26, 1906,[5] was to divest the tribes of title to such strips of land; that it provided that a railway company should have the right to purchase a strip of land used as a right of way at a valuation to be determined by the

---

1. Cited with approval in St. Louis-San Francisco Ry. Co. v. Town of Francis, 10 Cir., 249 F.2d 546, and Town of Maysville, Oklahoma v. Magnolia Petroleum Co., 10 Cir., 272 F.2d 806.

2. Act of Congress of March 2, 1899, 30 Stat. 990, and Act of Congress of February 28, 1902, 32 Stat. 43, 25 U.S.C.A. § 312 et seq.

3. United States v. Magnolia Petroleum Co., 10 Cir., 110 F.2d 212; United States v. Drumb, 10 Cir., 152 F.2d 821.

4. The Act which ratified an agreement entered into between the United States and the Choctaw and Chickasaw tribes, commonly referred to as the Supplemental Agreement, 32 Stat. 641.

5. Entitled, "An Act To provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory, and for other purposes", 34 Stat. 137.

Secretary of Interior; that it further provided if such railroad company should fail to make payment within the time prescribed by regulation or should cease to use the land for right of way purposes title thereto should vest in the owner of the legal subdivision of which the strip was a part, except that title to lands within a municipality should, upon abandonment, vest in such municipality. It was further shown that the Secretary of Interior promulgated a regulation as directed by the Act requiring payment before November 1, 1908, and providing that in the event "any railroad or railway company fails to purchase the land upon which it holds an easement prior to that date, title will vest in the owner of the legal subdivision of which the land so abandoned is a part, except where lands are within a municipality when title will vest in such municipality."

The Court then concluded that the land upon which the railroad company rightfully acquired an easement was reserved from allotment; that the railway company was given the right to purchase the title in fee to the land; "that such right of purchase expired on June 30, 1909 [6]; that failure to exercise such right constituted abandonment of the title in fee" and that upon such abandonment title to the land vested in the Town of Maysville because on that date the land was within the municipality.

In our case the land in question upon which the railway company had obtained an easement was reserved from allotment and title remained in the tribes. The railway company did not take advantage of its right to purchase the fee title to the land, and the "failure to exercise such right constituted abandonment of the title in fee" on November 1, 1908. Title to the strip of land thereupon vested in the allottee, Rosa McLish, who was then the owner of the legal subdivision of which such strip was a part. Upon that decisive date the land was not within the municipality and the City of Ard-

more could not acquire any interest in such land upon the subsequent extinguishment of the easement.

Reversed and remanded for determination of the rights of the appellants.

6. The time within which the railway company was to make the payment for the land in that instance was extended by the Secretary of Interior to June 30, 1909.